(100 App. Div. 176)

PEOPLE ex rel. SCHAU v. WHITTET et al., Civil Service Commission, et al.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. MUNICIPAL CORPORATIONS—FIRE DEPARTMENT—BATTALION CHIEF—NATURE OF DUTIES—CIVIL SERVICE LAW—COMPETITIVE CLASS.

The statute declares that the competitive class of the civil service shall include all positions for which it is practicable to determine the fitness of applicants by competitive examination, and that the noncompetitive class shall include such positions as are not in the exempt class or the labor class, and which it is impracticable to include in the competitive class. *Held*, that a battalion chief of a fire department having charge of a district into which the city is divided for fire purposes, and, in the absence of the chief, having supreme command in his district, with the duty of inspection over all companies and apparatus in his district, and responsible for the condition thereof, should be classed in the noncompetitive class.

2. SAME—CERTIORARI—INTEREST OF RELATOR.

Where a civil service regulation placed the position of battalion chief in the fire department of the city of Buffalo in the competitive class of civil service positions, one appointed a battalion chief without competitive examination, and who was otherwise eligible, has such an interest in the regulation as to entitle him to maintain certiorari to review the placing of the position in that class.

3. SAME—CERTIORARI—LIMITATIONS.

Code Civ. Proc. § 2125, provides that a writ of certiorari to review a determination must be granted and served within four calendar months after the determination becomes final and binding on the relator. *Held*, that where the position of battalion chief in the fire department of the city of Buffalo was placed in the competitive class in 1899, and on July 11, 1904, an appointment to such office was made without competitive examination, a writ of certiorari issued in August following, on the relation of the appointee, to review the action of placing such position in the competitive class, was in time.

Stover and Williams, JJ., dissenting.

Certiorari by the people, on the relation of John M. Schau, against Joseph L. Whittet and others as Civil Service Commissioners, and constituting the municipal civil service commission of the city of Buffalo, and Cuthbert W. Pound and others, constituting the civil service commission of the state of New York, and Erastus C. Knight, as mayor of Buffalo, to review the proceedings of respondents in connection with placing the position of battalion chief of the fire department of the city of Buffalo in Schedule B, or the competitive class, of the civil service. Writ sustained and proceedings reversed and annulled.

This is a writ of certiorari duly attested August 16, 1904, and issued to the above-named defendants in their various respective official capacities, commanding them to make return to this court of their proceedings in connection with placing the position of battalion chief of the fire department of the city of Buffalo in Schedule B, or the competitive class, of the civil service.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Edward R. O'Malley, for relator.

Charles B. Wheeler and Charles L. Feldman, for Joseph L. Whittet and others.

John Cunneen and Sandford T. Church, for Cuthbert W. Pound and others.

HISCOCK, J. The relator desires to be a battalion chief in the fire department of the city of Buffalo. There stands between him and an authorized appointment a provision of the civil service regulations applicable to the city of Buffalo that such appointment shall be subject to competitive examination, and he is seeking by this proceeding to have such provision reviewed and declared invalid. While there are other questions somewhat difficult of solution, and especially involving the right of relator to maintain this proceeding, the important, substantial one presented to us is whether the decision of the municipal civil service commission of the city of Buffalo, approved by the civil service commission of the state, to place the position of battalion chief in the competitive class of the civil service, is reasonable and right, or whether it is so unreasonable, impracticable, and improper that we ought to reverse it and eliminate this requirement. A statement somewhat at length of the material and undisputed facts appearing to us by the various returns will be needful in order to afford an intelligent appreciation of the reasons which lead us to the conclusion that it is our duty to follow the latter course:

The department of fire in Buffalo is under the general supervision and control of the board of fire commissioners, which consists of three members appointed by the mayor. The practical officers of the department, in order of rank, are a chief and assistant chief engineer, battalion chiefs, captains, and lieutenants. At the time involved there was provision for eight battalion chiefs, each one of whom had charge of one of the eight districts into which the city was divided for fire purposes, subject, of course, to the general supervision and authority of his superiors, and in their absence, each was in supreme command and control of his particular district. He was expected to be upon duty constantly, except for special causes calling or permitting him to go elsewhere, and to attend all fires at stations assigned to him. Unless and until a superior assumed it, he took command at a fire, directing the movements of officers and men. Upon him was devolved the duty of inspection over all companies and apparatus situated within his district, and he was responsible for the proper condition thereof. The responsibility was placed upon him not to unnecessarily jeopardize the lives of men under his command, and of enforcing proper discipline upon their part. He had authority to detail men for special duty at theaters and places of amusement, and to see that all laws and ordinances were enforced for protection from fires. He also had the right to order the arrest of any person who should disobey his orders or who should become disorderly at a fire. He even had the right, if in command at a fire, in concurrence with the mayor or a fire commissioner, to direct a building to be torn down, and also the right to enter premises for the purpose of ascertaining whether there was any violation of ordinances for the prevention of fire. In the absence of the chief engineer and the assistant chief engineer, it was obligatory upon the board to designate a battalion chief to act as the chief executive officer of the department, with full authority in the premises. There were, of course, very many minor duties and powers incidental to these larger ones, which it is not necessary to mention.

Under the provisions of the Constitution, the civil service law has defined four classes of positions and appointments, namely, the exempt class, the competitive class, the noncompetitive class, and the labor class, in cities. Manifestly, the last does not include the position in question. Neither, we think, does the first one. The relator contends that the position of battalion chief is that of a deputy, and also that it carries confidential and fiduciary relations, so that for these reasons it should be exempt from examination. This view, however, does not commend itself to our judgment.

The statute declares that:

"The competitive class shall include all positions for which it is practicable to determine the merit and fitness of applicants by competitive examination, and shall include all positions now existing or hereafter created, of whatever functions, designations or compensation, in each and every branch of the classified service, except such positions as are in the exempt class, the non-competitive class or the labor class." The noncompetitive class "shall include such positions as are not in the exempt class or the labor class and which it is impracticable to include in the competitive class. Appointments to positions in the non-competitive class shall be made after such non-competitive examination as is prescribed by the rules."

Since 1899 it has been the rule in Buffalo that the position of battalion chief should be filled only upon and after a competitive examination. The positions of chief and assistant chief engineer have been exempt from such examination, but all of the other positions in the active service heretofore referred to, and, in addition, the positions of first-grade and second-grade firemen, have been subject thereto. In addition, there has been adequate provision for promotion through the service; the chief being promoted from assistant or battalion chief, the assistant chief from battalion chiefs, and battalion chiefs from captains, and so on through the list. While this position has thus been subject to competitive examination, it does not appear that any vacancy has arisen within the period mentioned which has been filled by this method. Therefore, in deciding whether competitive examination is feasible, as a means of selecting appointees, we cannot have for our guidance the benefit of actual experience. We must test the element of "practicability," which by the statute is made an essential condition to the imposition of competitive examinations, by the character of the position, and of the duties and obligations attached thereto. The more carefully we do this, the more insistently is forced upon our mind the conviction that high marks upon any examination which could be devised would be an unsatisfactory and uncertain way by which to decide who would be the best man to occupy one of these places. It would be conceded by any reasonable person at once, of course, that a man about to be called upon to discharge the duties which we have enumerated ought not to be selected by reason of superiority in an examination upon merely scholastic attainments. But if another course should be pursued upon the examination, and one should be formulated which followed, as nearly as might be, the practical lines of work to be performed, we apprehend that surpassing excellence even then would not be a safe test for appointment. There cannot be any doubt that a safe and efficient battalion chief must possess industry, energy, endurance, vigilance, and bravery, the power of commanding and controlling men, a high degree of executive ability, and rapid and cool judgment under exciting and disturbing conditions. These qualifications were carefully and forcibly summarized in the communication addressed by the Buffalo civil service commission to the state civil service commission, favoring the withdrawal of this position from the competitive class, as follows:

"He [a battalion chief] must have the power to command and enforce discipline. He must possess good judgment of human nature, coupled with tact, to enable him to deal with men under him. He must possess a sense of justice and fairness, so as to gain and retain the respect and confidence of his subordinates. He must have initiative ability, recourse in emergency, quick judgment, courage, and energy."

If we should assume that the wisdom of an examining board could devise a series of questions calculated, so far as mere questions could, to disclose who of several candidates possessed in the highest degree these and other kindred and essential attributes of mind and body, we should still feel that such result was not very valuable. It at least would be an even chance that in the quiet of an examination room a candidate might excel in a disquisition upon the proper manner of discharging these duties, who, when subjected to the test of actual prac-

tice in the midst of disquieting surroundings, and under the strain of oppressive responsibility, would utterly fail. We do not believe that it is possible by a theoretical examination to adequately or accurately weigh or measure the larger possession by one candidate than another of the mental and physical characteristics which are manifestly indispensable to a successful discharge of the duties and powers devolved upon this position. Such traits seem too intangible to be gauged in such a manner. A more reliable demonstration of their possession by a candidate ought to be furnished by experience, and the right should be reserved to the appointing power of freely utilizing the knowledge and judgment derived from study of such experience.

Our judgment upon this subject is confirmed and sustained by the attitude of the officials of the city of Buffalo. After this position was put in the competitive class, the civil service commission of the city endeavored to formulate and frame an examination through and by which to provide for the necessary competition. The members were unable to do so, and no satisfactory series of questions and form of examination have yet been prepared. The board of fire commissioners, chief of the department, the mayor, and a majority of the civil service commission itself, reached the conclusion that the requirement for a competitive examination should be removed, and have attempted to secure this result, but the state civil service commission has opposed their efforts. There is no suggestion that the former officials are lacking in desire for a fair and practical system of civil service, or that they have any wish but for an efficient fire department, which shall be governed by promotion and merit, rather than by any extraneous or unworthy considerations, and the views and action of such men seem to us to be a somewhat impressive practical argument against existing conditions.

It is true that we are cited by the learned counsel to cases of cities where positions similar to this one in fire departments are said to be filled upon competitive examinations. We are, however, not supplied with information as to the details of these appointments, or of the conditions under which they were made, or of the success or failure which has attended this method of making them. Under such circumstances, while certainly they may properly be called to our attention as an argument, we cannot regard them as authorities compelling us to an adjudication which we do not regard as wise upon the facts appearing before us in this case.

It is also urged that, if this position is exempted from competitive examination, that of captain may also be. We are, of course, neither called upon nor permitted to pass upon that question at this time. It is sufficient to say that our decision upon the position of battalion chief does not necessarily carry with it a similar decision upon some other position. It very often happens that in a line of cases involving some similar features, but in differing degrees, part will be upon one side, and part upon the other, of a dividing principle. There is no position in the fire department of Buffalo which does not involve in some degree the requirements of mental and physical capacity, which may not easily be made the subject of a competitive examination. In some of these positions, however, such elements may be of such a percentage that a

satisfactory competitive examination may be devised, which would not be of practical application to another position, involving in a much higher degree such characteristics and abilities.

We have discussed the advisability and practicability of a competitive examination as applied to this class of positions, and have reached a conclusion adverse to it. We see no reason, however, why such a position should not be made subject to a rigid qualifying examination, and all of the desirable and commendable qualifications of promotion in the service be preserved. Nothing can be a more effective inducement to valuable service in such a department than the guaranty of promotion based upon merit, and we perceive no cause .why the position of battalion chief should not be made upon promotion, and also be placed in the noncompetitive class, and made subject to a qualifying examination which might be an aid in determining the comparative fitness of rival candidates.

We next pass to the decision of the questions already briefly suggested—whether, first, the relator has an interest in the subject-matter of this controversy sufficient to enable him to maintain this proceeding; and whether, second, if he has, his proceedings have been instituted within the time fixed by the statute. While, perhaps, the answer to these questions is not entirely clear, we nevertheless think that it may be given in favor of relator.

The relator for several years prior to July 11, 1904, was a member of the Buffalo fire department, having been promoted at that date through various positions to the rank of captain. Upon said date he was appointed to the position of battalion chief. The municipal civil service commission of the city of Buffalo have refused to certify his pay as such officer upon the ground that he had not taken a competitive examination and had his name placed upon the eligible list for the position of battalion chief, and he is unable to collect his pay. It is urged that all of these facts give him no such legal interest in the question whether a competitive examination should be required as entitles him to seek a revocation of such requirement, but that the appointing power is the only party injured by such requirement, if invalid, and is the only one to bring this proceeding to review the same.

We agree with the contention made in behalf of defendants that the appointment of relator as battalion chief was invalid. It was in violation of the rules and regulations prescribed by the civil service commissions, and then in force. It was not in accordance with the conclusions reached by us now—that, while said position was not properly classified in the competitive class, it still may be properly put in the noncompetitive class. For the purposes of this proceeding, and the consideration of the immediate question under discussion, we shall treat the appointment as entirely invalid, and the position as vacant. Doing this, we have a vacancy in the position of battalion chief, which, under the rules, must be filled by the promotion of one of the captains of the department. Relator, treating his promotion as invalid, is a captain, and therefore one of the limited class eligible for appointment. He is in good faith a candidate for appointment. While the attempted appointment by the board of fire commissioners must be treated as ineffectual, it still may be regarded as indicating a desire and intention

upon the part of the appointing power to appoint relator to the vacancy. There stands in his way, as an unjust and improper barrier, the requirement for a competitive examination. It is true that, if subjected to that improper test, he might succeed, and, if relieved from it, he might still fail. Nevertheless we think that he has a practical interest, which amounts to a legal right to have removed any extra and improper obstacle to his attempt to procure the appointment in question, and for that reason has the right to maintain this proceeding to review the decision of the civil service commissioners in the respect indicated. Chittenden v. Wurster, 152 N. Y. 345, 363, 46 N. E. 857, 37 L. R. A. 809.

As bearing upon the second proposition—that these proceedings **have** not been instituted in time—section 2125 of the Code provides:

"Subject to the provisions of the next section, a writ of certiorari **to** review a determination must be granted and served, within four calendar months after the determination to be reviewed becomes final and binding, upon the relator, or the person whom he represents, either in law or in fact."

The position sought by relator was originally placed in the competitive class in 1899, and thereafter remained therein. This writ was not issued until August 15, 1904. January 15, 1904, the fire commissioners of the city of Buffalo requested the municipal civil service commission to amend the rules and classification so as to place the position of battalion chief in the exempt class, and thereafter said civil service commission took up the subject with the state civil service commission, recommending that said position be placed in the noncompetitive class. In June, 1904, the state civil service commission decided not to approve the recommendation, and thereafter, and on July 11, 1904, the municipal civil service commission adopted certain amendments to the rule, covering this subject; thereby, in effect, following the decision of the state civil service commission, and reaffirming the rule in question, which provided for competitive examinations. Thereafter, as required by law, the amended rule containing the provision for competitive examination was submitted to the mayor of the city of Buffalo for his approval, and the same was approved by him, and thereafter submitted to the state civil service commission for his approval, and was thereafter duly approved by it, and returned to the commission with the certificate of its approval duly attached, "whereby [as stated in the return of the Buffalo civil service commission in this proceeding] said amended rule and classification became and is of full force and effect." Relator was at this time a candidate for appointment, and this determination became final and binding upon him as such candidate. We think that all of the proceedings which took place in connection with the proposed revision of this rule resulted in what was tantamount to a decision to continue the competitive examination, and to a readoption of the rule relating thereto, and that relator, who, so far as it appears, at this time, by reason of his candidacy, first became interested in and bound by the decision, had a right within four months after July 11, 1904, to institute this proceeding. If this view is correct, he has moved within the prescribed time.

The writ should be sustained, and the proceedings of the defendants, placing the position of battalion chief in the competitive class of the civil service, reversed and annulled, with costs, without prejudice, how-

ever, to the right to reclassify the said position in the noncompetitive class.

Writ of certiorari sustained, and the proceedings of the defendant in placing the position of battalion chief in the competitive class of the civil service reversed and annulled, with $50 costs and disbursements, without prejudice, however, to the right to reclassify the said position in the noncompetitive class. All concur, except STOVER, J., who dissents in opinion in which WILLIAMS, J. concurs.

STOVER, J. (dissenting). The Constitution of the state of New York provides:

"Appointments and promotions in the civil service of the state and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive: provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States in the late Civil War, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section."

The civil service law (chapter 370, p. 795, of the Laws of 1899, as amended by chapter 195, p. 419, of the Laws of 1900) provides for the appointment of civil service commissioners, regulates their powers and duties, and contains legislation for the purpose of carrying into effect the constitutional provision. Section 7 of the civil service law provides:

"No officer or officers having the power of appointment or employment shall select or appoint any person for appointment, employment, promotion or reinstatement except in accordance with the provisions of this act and the rules and regulations prescribed thereunder."

The act further divides the civil service of the state into the classified and unclassified service. The unclassified service comprises all elective offices, all offices filled by election or appointment by the Legislature on joint ballot, and other positions named in the statute, which does not include the office in question here. The classified service comprises all positions not included in the unclassified service. It further provides for the selection of municipal civil service commissioners, who are authorized to prescribe and enforce rules for the classification of the offices in the classified service in the city, not inconsistent with the Constitution and the provisions of the legislative acts. Section 11 of the act arranges the offices and positions in the classified service in the state in four classes, namely, the exempt class, the competitive class, the noncompetitive class, and in cities the labor class. By section 12, positions included in the exempt class are the deputies of principal executive officers authorized by law to act generally for and in place of their principals; one secretary of each officer, board, and commission authorized by law to appoint a secretary; one clerk and one deputy clerk, if authorized by law, of each court; and one clerk of each elective judicial officer. In the state service all unskilled laborers and such skilled laborers as are not included in the competitive class or the noncompetitive class, "and in addition thereto there may be included in

the exempt class all other subordinate offices for the filling of which competitive or non-competitive examination may be found to be not practicable." And it further provides:

"But no office or position shall be deemed to be in the exempt class unless it is specifically named in such class in the rules, and the reasons for such exemption shall be stated separately in the annual reports of the commission."

Appointments to positions in the exempt class may be made without examination.

Section 13 of the act defines the competitive class to include—

"All positions for which it is practicable to determine the merit and fitness of applicants by competitive examination, and shall include all positions now existing, or hereafter created, of whatever functions, designations or compensation, in each and every branch of the classified service, except such positions as are in the exempt class, the noncompetitive class or the labor class."

The act further provides for promotion, transfer, reinstatement, and reduction in the civil service.

Section 15 provides:

"Vacancies in positions in the competitive class shall be filled, so far as practicable, by promotion from among persons holding positions in a lower grade in the department, office or institution in which the vacancy exists. Promotions shall be based upon merit and competition and upon the superior qualifications of the person promoted as shown by his previous service, due weight being given to seniority. * * *"

Section 16 provides:

"The non-competitive class shall include such positions as are not in the exempt class or the labor class and which it is impracticable to include in the competitive class. Appointments to positions in the non-competitive class shall be made after such non-competitive examination as is prescribed by the rules."

This furnishes a complete scheme for the carrying out of the mandate of the Constitution, and, if legislation was necessary for the enforcement of this constitutional provision, it has been provided by the act in question.

The relator, in order to obtain the relief asked for here, must show that he is in the exempt class, for, whether he be in the competitive or noncompetitive class, he has not been subjected to such examination as is prescribed by the rules and regulations under the civil service law; and at the outset we are met with the proposition that the action of the civil service commissioners in placing the position of battalion chief in the competitive list was such an unwarrantable and unreasonable exercise of power that it should be reviewed and reversed by this court.

One of the functions of the civil service commissioners, under the act of the Legislature above quoted, is to prescribe and enforce suitable rules and regulations for the purpose of carrying into effect the provisions of the act and of the Constitution. This necessarily implies the exercise of judgment and discretion—not arbitrary, perhaps; but it calls for the exercise of judgment based upon an investigation of the particular circumstances, and a knowledge of particular situations. Whether the judgment exercised is of a judicial nature, or purely administrative, for the purposes of this case, is not of great moment.

The Legislature has lodged with the civil service commissioners the duty in the first instance of prescribing necessary forms of procedure, and the regulation of appointments to the civil service. In the exercise of that discretion, they have undertaken to say that the position of battalion chief in the fire department of Buffalo is of such a nature that it should be in the competitive class; and, in accordance therewith, they have prescribed rules and regulations to govern the appointment to that position in compliance with the requirement that "all appointments and promotions in the civil service shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." They have determined that this position shall be included in the competitive class. This may be based upon their knowledge of the situation, which may be peculiar to the city of Buffalo, it may be based upon their personal knowledge and experience in the conduct of the department, or it may be based upon their observation and information acquired from other sources; but, whatever forms the basis of their judgment, unless it appears to us that it is an unreasonable or unwarrantable exercise of power, we ought not to interfere with it.

Now, what is the exact situation? We have the return of the state civil service commissioners that in the city of New York a number of persons took the competitive examination for the position of battalion chief; that a number were placed upon the eligible list, and that 19 appointments were made from such list, and the persons so appointed are now in the service as such battalion chiefs; that in the city of Rochester a competitive examination was held for the position of battalion chief; that 15 persons took the examination, 10 passed, and 1 appointment was made, and the person so appointed is serving as battalion chief in the city of Rochester; and that the duties of battalion chief in the cities of Rochester and New York are identical with those in the city of Buffalo. This being a fact, it would seem to conclusively destroy the contention of the relator that it is impracticable to select Buffalo chiefs from a competitive list.

But it is said that because he may be called upon, in the discharge of his duty, to perform the duties of his chief, he is therefore a deputy, and within the provision of the law excluding the deputies of principal executive officers authorized by law to act generally for and in place of their principals. The statute clearly applies to deputies known as such, and is limited to those who act generally for their chiefs; but a battalion chief is a separate and distinct position from that of a chief of a department, and the battalion chief does not act generally in place of his principal, but is only permitted to act within the limits of his battalion within the territory assigned to him, and is not acting generally for his chief, but is acting in the discharge of the duties of his own position, acting for himself, and within the lines defined by law for his action, and can act in no other way. He is not a deputy, within the meaning of the civil service law. Nor is he in such confidential relations to his chief as to warrant his exemption. There is nothing to indicate any confidential position, nor do we think the question of the confidential character has any bearing upon this case. It is simply a question as to whether it is practicable to obtain efficient battalion chiefs by competitive

examination. As we have seen, it has been found to be practicable in other instances, and no reason is assigned why it is not practicable within the city limits of the city of Buffalo.

We think the statute gave the power to the commission to adopt the rules which they did adopt; that they were acting within their jurisdiction, and we ought not to interfere with their determination.

Another consideration is presented, namely, that, so far as practicable, promotions are to be made from the lower grades of the service. It is quite apparent that the efficiency of the service will be greatly advanced by the promotion from one grade to another. . If the contention of the relator is to obtain, this promotion becomes impossible, for promotions may be made entirely from outsiders, and no promotion may be expected as a matter of right, whatever the efficiency may be of the incumbent of the lower grade.

Another objection is urged, namely, that the proceedings should have been commenced within four months from the time the classification was made. The statute gives the remedy of certiorari to a person who may be aggrieved by the action complained of, not to any person who may at any time thereafter become aggrieved by reason of the existence of the act. The remedy provided is somewhat summary in its nature, and intended to provide a more efficient remedy than the slower action at law, but it is not intended that proceedings of this character, even where subject to review, should be held open indefinitely, or that any person aggrieved at any time by reason of their existence might avail himself of the provisions of the law. The statute names not only the persons who may take advantage of it, namely, the persons aggrieved, but limits even those who may be aggrieved to the enforcement of their remedy within four months after the doing of the act. If the relator at the time the act complained of was accomplished had no interest in it, then he was not aggrieved by it, and could not by any subsequent action review the action of the tribunal. If he was aggrieved at that time, he was bound to avail himself of the statutory remedy within the limit. Having failed to do so, he cannot now be heard.

The relator has been illegally appointed to the position. There is no claim that he has in any way complied with the rules and the civil service regulations, and this illegal act gave him no greater rights than he formerly had.

We think the determination of the civil service commissioners was right, and the writ should be dismissed.

WILLIAMS, J., concurs.